**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SATORIAGRICULTURAL CONSULTANCY AND PROJECTS MANAGEMENT LLC SPC, | |
| Petitioner, | Civil Action No. 25-1287 (BAH) |
| v. | Judge Beryl A. Howell |
| T&R PRODUCTIONS LLC, | |
| Respondent. | |

**MEMORANDUM OPINION**

In 2024, the International Commercial Arbitration Court at the Chamber of Commerce and Industry of the Russian Federation ("ICAC") issued three international arbitration awards, totaling almost $14 million, against respondent T&R Productions LLC ("T&R Productions"), a company incorporated in the District of Columbia, in favor of a Russian state-owned media company that has since been sanctioned by the United States for interference with U.S. elections, and therefore is unable to receive payment of the arbitration awards out of funds held in the United States. Pet. to Recognize and Enforce Arbitration Awards ("Pet.") at 1-2, ¶ 11 n.1, ECF No. 1. Shortly before the U.S. sanctions went into effect, however, the current petitioner, Satoriagricultural Consultancy and Projects Management LLC ("SCPM" or "petitioner"), a company based on the United Arab Emirates ("UAE"), purchased the sole interest in these arbitral awards from the original, now-sanctioned Russian claimant. Pet. ¶¶ 10-11. Now, because respondent has filed no response to the Petition, *see* Pet'r's Mot. for Entry of Default ("Aff. Default") ¶ 6, ECF No. 11; Clerk's Entry Default, ECF. No. 12, SCPM seeks default judgment, pursuant to Federal Rule of Civil Procedure 55(b), as well as "recogni[tion] and enforce[ment]" of the three arbitral awards under the New York Convention, as codified by the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*, and post-

1

judgment interest under 28 U.S.C. § 1961. *See* Pet'r's Mot. for Default J. ("Pet'r's Mot.") at 1, ECF No. 14; Pet.

Notwithstanding the obvious possibility that SCPM's transactions with the original Russian claimant may have been made in anticipation of the imposition of U.S. sanctions on the latter, and given the declination by the U.S. government, when asked by the Court, to take any position on whether enforcement of the awards are against the public policy of the United States in this matter, the New York Convention requires recognition of the arbitral awards. Accordingly, for the reasons explained more fully below, the arbitral awards are recognized against T&R Productions and in favor of SCPM, and default judgment is entered enforcing each of the three arbitral awards and costs, totaling $13,984,502.00, along with post-judgment interest as calculated under 28 U.S.C. § 1961.

## I.    BACKGROUND

The relevant factual background, as set out in the petition, *see infra* Part II (explaining that upon the respondent's default, petitioner's allegations are accepted as true), followed by the procedural history, are set out below.

### A. Factual Background

Respondent T&R Productions, a "United States-based media company," contracted with TV-Novosti (formally "Autonomous Non-Profit Organization TV-Novosti"), a "Russian state-owned not-for-profit media company," to "produce[] content for the Russian state-funded news network RT America," TV-Novosti's America-facing branch. Pet. ¶¶ 6-7. Their contractual relationship is documented in three agreements executed by respondent and TV-Novosti on July 16, 2018 ("Agreement No. 1"), December 17, 2021 ("Agreement No. 2"), and December 14, 2018 ("Agreement No. 3") (collectively "the agreements"). *Id.* ¶¶ 12, 26, 39. Each agreement provided

for TV-Novosti to pay T&R Productions in advance for the contracted-for services, which TV-Novosti did. *Id.* ¶ 15, 28, 42.[1] Each agreement also allowed either party to terminate the agreement and required the parties to process any refunds within 180 days of termination. *Id.* ¶¶ 13-14, 27, 40-41.

On April 14, 2022, TV-Novosti terminated all three agreements in writing. *Id.* ¶¶ 16, 29, 43. After T&R Productions failed to refund the advance payments for services not yet rendered within 180 days, as required by the agreements, *id.* ¶¶ 19, 32, 46, in December 2022, TV-Novosti initiated arbitration proceedings against T&R Productions for the amounts not refunded under the three agreements, *id.* ¶¶ 20, 33, 47. TV-Novosti pursued arbitration in ICAC, *id.* at 2, ¶ 8, as required for resolution of disputes under each of the three agreements, Agreement No. 1 at 9 § 10.2; Agreement No. 2 at 4-5 § 9.2; Agreement No. 3 at 6 § 9.2.

After briefing and oral arguments, in February 2024, an arbitration panel decided all three disputes in favor of TV-Novosti and awarded TV-Novosti the amounts alleged in unrendered services under each agreement, along with costs of arbitration. Pet., Ex. A, ICAC Decision M-187/2022 ("Award No. 1") at 35-36, ECF No. 1-1; *id.*, Ex. B, ICAC Decision M-188/2022 ("Award No. 2") at 44, ECF No. 1-2; *id.*, Ex. C, ICAC Decision M-189/2022 ("Award No. 3") at 64, ECF No. 1-3. The table below shows for each agreement, the amount advanced by TV-Novosti, the amount ordered refunded by the arbitral panel, and the arbitration costs owed by T&R Productions under the arbitral panel's award.

---

[1] The Petition says the agreements required TV-Novosti to pay a lump sum in advance, Pet. ¶¶ 15, 26, 39, but the agreements, attached to the Petition, require monthly payments and allow TV-Novosti to pay in advance at its election. Pet'r's Mot., Ex. F, Agreement No. 1 at 4 § 3.5, ECF No. 1-6; *id.*, Ex. G, Agreement No. 2 at 3 § 3.3, ECF No. 1-7; *id.*, Ex. H, Agreement No. 3 at 4 § 3.3, ECF No. 1-8. Regardless, petitioner alleges that TV-Novosti paid its financial obligations in advance, Pet. ¶¶ 15, 28, 42, and that allegation is accepted as true in the default judgment posture.

| Agreement | Amount Advanced | Refund Ordered | Costs Owed[2] |
|---|---|---|---|
| Agreement No. 1 | $3,359,400.00 | $3,054,000.00 | $54,824.00 plus ₽210,094.55 |
| Agreement No. 2 | $5,180,000.00 | $4,480,000.00 | $63,380.00 |
| Agreement No. 3 | $6,885,450.00 | $6,259,500.00 | $72,798.00 |

On August 20, 2024, TV-Novosti assigned its interest in each of the three agreements and associated arbitral awards to SCPM.  Pet. ¶ 10; *id.*, Ex. E, Assignment Agreement, ECF No. 1-5. SCPM is a limited liability corporation organized under the laws of the UAE.  Pet. ¶ 1.

**B.  Procedural Background**

SCPM filed a petition in this Court to enforce the three awards and seeking post-judgment interest.  *See* Pet.  Service was effected on May 12, 2025, Return of Service/Aff., ECF No. 9, but T&R Productions did not timely answer, *see* FED. R. CIV. P. 12(a)(1)(A)(i) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint . . . ."). Following SCPM's motion for an entry of default, *see* Aff. Default, the Clerk of the Court entered default against respondent, *see* Clerk's Entry Default.  Petitioner thereafter filed the pending motion for default judgment.  Pet'r's Mot.  Respondent has filed no response to petitioner's motion and has made no other filing in connection with this case.

The Petition states that TV-Novosti is now subject to U.S. sanctions prohibiting payments to TV-Novosti from U.S.-held funds, Pet. ¶¶ 6, 11 n.1, prompting the Court to order petitioner to show cause why the Petition should not be denied as against public policy as a potential end-run around U.S. sanctions, *see* Minute Order to Show Cause (Sept. 10, 2025), since a court may decline to enforce an award subject to the New York Convention if enforcement would violate the public

---

[2]     The first arbitration award included an award represented in Russian rubles (₽) for the fee paid to the Chairman of the arbitral panel for his participation.  Pet. ¶ 23.  Petitioner moves only for the costs ordered in U.S. dollars.  *See* Pet'r's Mot. at 2 ("Petitioner seeks entry of a Default Judgment for sum certain damages totaling $13,793,500.00, consisting of $3,054,000.00, $4,480,000.00, and $6,259,500.00 from three separate arbitral awards, in addition to $191,002.00 in arbitration and registration fees, together with post-judgment interest pursuant to 28 U.S.C. § 1961.").

policy of the country where enforcement is sought, *see infra* Part III.B.  The Court also invited the United States to present its position on the same issue.  *See* Minute Order (Sept. 10, 2025). Petitioner responded with supplemental briefing, Pet'r's Resp. to Ct.'s Order to Show Cause ("Pet'r's OTSC Resp."), ECF No. 17, while the United States government, after being twice granted an extension and taking nearly four months to consider the issue, *see* Gov't's Not. of Potential Participation & Extension of Time, ECF No. 16; Minute Order (Sept. 14, 2025) (granting extension); Gov't's Mot. for Extension of Time to File Amicus Br., ECF No. 19; Minute Order (Dec. 24, 2025) (granting second extension), declined to take a position on whether the awards should be confirmed, Gov't's *Amicus* Statement of Position ("Gov't Amicus Br."), ECF No. 20. This briefing, considered alongside the timing of U.S. sanctions, clarified the following timeline.

In February 2022, Russia invaded Ukraine.  Cory Welt, Cong. Rsch. Serv., No. 11869, *Russia's Invasion of Ukraine: Overview of U.S. Sanctions and Other Responses* 1 (Apr. 22, 2022). In the months that followed, the United States issued a flurry of sanctions against certain Russian entities, though not yet against TV-Novosti, including by prohibiting the transfer of funds held in the United States to sanctioned entities.  *Id.* at 2-3.  On April 8, 2022, Executive Order 14071 prohibited any new investments or provision of certain services to Russia.  Exec. Order 14071, 87 Fed. Reg. 20999.

Shortly after the issuance of Executive Order 140171, TV-Novosti terminated its contracts with respondent, on April 14, 2022, and began seeking refunds of the money already advanced to respondent and presumably held in the United States.  Pet. ¶¶ 16, 29, 43.  Respondent later argued in arbitration that respondent sent the refund to TV-Novosti via PNC Bank, but that the funds had not been deposited in TV-Novosti's bank account because PNC Bank possibly believed such a transaction violated U.S. sanctions against Russia.  *See* Award No. 1 at 8; Award No. 2 at 12; Award

No. 3 at 13.  The arbitral panel found that U.S. law would not have prohibited such a transaction at that time because neither T&R Productions nor TV-Novosti was then sanctioned by the United States. Award No. 1 at 31-32; Award No. 2 at 30; Award No. 3 at 59.  In any event, TV-Novosti claimed not to have received the funds, and pursued arbitration. Pet. ¶¶ 20, 33, 47.

After prevailing in arbitration in June 2024, TV-Novosti sold its interest in the three arbitral awards, totaling almost $14,000,000 USD, to SCPM, now petitioner in this matter, for 2,000,000 Russian rubles, approximately the equivalent of $20,000 USD.  Pet'r's OTSC Resp. at 4.  That agreement between TV-Novosti and SCPM was fully executed and consideration paid on August 27, 2024.  *Id.*, Ex. A, Decl. of Pet'r's Att'y Glenn Kolleeny ("Kolleeny Decl.") ¶ 12, ECF No. 17-1.  Despite the substantial gap between the value of the awards and the price paid for assignment, petitioner avers in a sworn declaration that TV-Novosti has assigned petitioner all interest in the awards, "with no profit-sharing arrangements, deferred payments, or ongoing obligations between the parties."  Kolleeny Decl.  ¶ 11.

The month after that sale, in September 2024, the United States sanctioned TV-Novosti for its alleged interference with U.S. elections, prohibiting the transfer of U.S.-held property to the company, unless the U.S. Office of Foreign Asset Control (OFAC) licenses such transfer.  *See* Pet. ¶ 11 n.1; 31 CFR § 587.201 (prohibiting such transactions by reference to Executive Order 14024, 86 Fed. Reg. 20249 (Apr. 15, 2021)); *id.* § 587.202(c) (providing for licensure of such transactions); *Russia-Related Designations*, OFAC (Sept. 13, 2024), https://ofac.treasury.gov/recent-actions/20240913 [https://perma.cc/8NDL-9J6J].

SCPM now seeks recognition and enforcement of the arbitral awards originally granted to TV-Novosti, arguing that "[n]o current OFAC regulation, sanctions designation, or licensing scheme . . . prohibits the enforcement sought here," because "Petitioner's property rights in the

Arbitration Awards fully vested before any sanctions were imposed on TV-Novosti" and "Petitioner's enforcement of the validly-acquired Arbitration Awards would not involve TV-Novosti," and that therefore the New York Convention mandates recognition.  Pet'r's OTSC Resp. at 7, 11.

The motion for default judgment to recognize and enforce the awards is now ripe for resolution.

## II.    LEGAL STANDARD

### A.  Default Judgment

Although dispositions on the merits are generally favored, the Federal Rules of Civil Procedure "provide for default judgments[] [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect "'the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights.'"  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  FED. R. CIV. P. 55(a); *see* 10A Charles Alan Wright *et al.*, FEDERAL PRACTICE AND PROCEDURE § 2682 (4th ed. 2025) ("When the prerequisites of Rule 55(a) are satisfied, an entry of default may be made by the clerk without any action being taken by the court . . . [as long as] the clerk [has] examine[d] the affidavits filed and [found] that they meet the requirements of Rule 55(a).").  Upon entry of default, "[a]n allegation—other than one relating to the amount of damages—is admitted."  FED. R. CIV. P. 8(b)(6); *see also Cross v. Equityexperts.org, LLC*, No. 19-14067, 2021 WL 5279412, at *1 n.1

7

(11th Cir. Nov. 12, 2021) (per curiam) ("[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact[;] he is not held to admit facts that are not well-pleaded or to admit conclusions of law." (first alteration in original) (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005))).

Then, the diligent party may move for default judgment, *see* FED. R. CIV. P. 55(b)(2), but such relief "is not automatic," *Mwani*, 417 F.3d at 6. "[T]he defendant['s] default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief," *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008) (internal quotation marks omitted), the jurisdictional prerequisites are satisfied, *Mwani*, 417 F.3d at 6, and the court in its discretion finds that default judgment is appropriate, *Jackson v. Beech*, 636 F.2d at 835.

## B. Enforcement of Arbitral Awards Under the New York Convention

The Federal Arbitration Act codified the New York Convention, 9 U.S.C. § 201, a multilateral treaty addressing the "recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought." New York Convention, art. I. The FAA authorizes the recipient of a foreign arbitral award to seek enforcement in a federal district court within three years of the arbitral award's issuance. 9 U.S.C. § 207.[3]

Under the FAA, a federal district court "*shall* confirm" an arbitral award that falls under the New York Convention "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* (emphasis added). "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution,' . . . the FAA affords the

---

[3]    The FAA refers to "confirm[ation]" of an award, *see id.*, whereas the New York Convention refers to "recognition and enforcement," New York Convention, art. V. "Recognition," which is the term primarily used by petitioner, *see* Pet'r's Mot., is used herein.

district court little discretion in refusing or deferring enforcement of foreign arbitral awards," unless an exception enumerated in the Convention applies. *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985)). The New York Convention permits courts of the enforcing state (*i.e.*, the country "where recognition and enforcement is sought") to deny enforcement of an arbitral award only when the respondent submits "proof" to the court of "incapacity," improper notice, an improperly constituted arbitral panel, or other enumerated defects, *see* New York Convention, art. V(1), or where the court finds—upon the respondent's request or on its own initiative—that the dispute is not subject to arbitration under the laws of the enforcing state or that recognition would violate the enforcing state's public policy, *see id.*, art. V(2). If no exception applies, the court must recognize the award and enter judgment in favor of the petitioner. 9 U.S.C. § 207.

## III.    DISCUSSION

After establishing that subject-matter and personal jurisdiction exist, and that the New York Convention applies to the awards, the applicability of exceptions to the New York Convention's mandate of enforcing international arbitral awards is discussed, particularly the public policy exception, on which petitioner provided supplemental briefing. Upon finding that the public policy exception does not apply here, given that the U.S. government, when asked about this very issue declined to take a position, the Court concludes that the awards must be enforced.

### A.  Jurisdiction

Subject-matter jurisdiction over this action is established, pursuant to 9 U.S.C. §§ 202 and 203, which together provide that U.S. district courts "shall have original jurisdiction over," *inter alia*, an "arbitral award arising out of a legal relationship, . . . which is considered as commercial"

and does not "aris[e] out of . . . a relationship which is entirely between citizens of the United

States." 9 U.S.C. §§ 202, 203; *see also* New York Convention art. I(1) ("This Convention shall

apply to the recognition and enforcement of arbitral awards . . . not considered as domestic awards

in the State where their recognition and enforcement are sought."). "[A] corporation is a citizen

of the United States if it is incorporated or has its principal place of business in the United States."

9 U.S.C. § 202.

The arbitral award here arose out of multi-million-dollar commercial contracts between

respondent, a U.S.-based company, and TV-Novosti, a Russian state-owned nonprofit company

incorporated in and with its principal place of business in Russia and thus does not qualify as a

citizen of the United States. *See* Pet. ¶¶ 6-7.[4] Subject-matter jurisdiction therefore exists over all

three awards, which arise from commercial, non-domestic relationships. *See* 9 U.S.C. §§ 202,

203.

Furthermore, personal jurisdiction may be exercised over respondent, which is a limited

liability company with its principal place of business in Washington, D.C., Pet. ¶ 2, and was served

via its registered agent in Washington, D.C., Return of Service/Aff; *see* Fed. R. Civ. P. 4(k)(1)(A)

("Serving a summons or filing a waiver of service establishes personal jurisdiction over a

defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where

the district court is located."); D.C. Code § 12-422 ("A District of Columbia court may exercise

personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his

or its principal place of business in, the District of Columbia as to any claim for relief.").

---

[4]    The FAA requires only that the "arbitral award" does not "aris[e] out of . . . a relationship which is entirely
between citizens of the United States," putting TV-Novosti's citizenship at issue. 9 U.S.C. § 202. Even if SCPM's
citizenship were at issue here, jurisdiction would exist because SCPM is incorporated and has its principal place of
business in the UAE. Pet. ¶ 1.

### B. Enforcement of the Arbitration Award

The awards that petitioner seeks to enforce are "not considered as domestic awards" in the United States, New York Convention, art. I(1), since TV-Novosti is not a citizen of the United States, Pet. ¶ 6; 9 U.S.C. § 202 ("award arising out of . . . a relationship which is entirely between citizens of the United States" is not a domestic award). The New York Convention and Federal Arbitration Act thus govern this action. Accordingly, the awards "shall" be enforced unless an exception enumerated in the New York Convention applies. 9 U.S.C. § 207; *see also supra* Part II.B (listing exceptions to enforcement under the New York Convention).

Respondent has not appeared in this action, *see* Clerk's Entry Default, so none of the grounds requiring submissions of proof by the respondent may justify denying the Petition, *see* New York Convention, art. V(1) (requiring that certain grounds for denial be considered "at the request of the party against whom [the award] is invoked," and "only if that party furnishes . . . proof" that the ground for denial applies).

A court in the enforcing country may decline to enforce an arbitral award *sua sponte* for two reasons: (1) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country," or (2) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." New York Convention, art. V(2). The first exception does not apply since the underlying arbitral disputes involve the exchange of funds for services under a commercial contract, Pet. ¶¶ 12, 26, 39; *supra* Part III.A, a standard subject of arbitration.

The second exception warranting declination to enforce an arbitral award raises a more significant question here. Specifically, the question is whether recognition and enforcement of the awards will violate the public policy of the United States, because TV-Novosti, the original

claimant in the arbitration, is currently sanctioned by the United States government for election interference, meaning that transfers of funds held in the United States to TV-Novosti are prohibited. *See* Pet. ¶ 11 n.1; *Russia-Related Designations*, *supra* (naming TV-Novosti as an entity subject to sanctions). Further, SCPM, itself a foreign company based in the UAE, only purchased TV-Novosti's interest less than a month before the United States barred the transfer of funds to TV-Novosti, *compare* Kolleeny Decl. ¶ 12 (averring that the purchase was completed and consideration paid August 27, 2024), *with Russia Related Designations*, *supra* (adding TV-Novosti to the sanctions list on September 13, 2024).

"The public policy defense under Article V(2)(b) of the New York Convention is to be construed narrowly," *Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas*, 314 F. Supp. 3d 95, 109 (D.D.C. 2018), reflecting "this country's strong public policy in support of the recognition of foreign arbitration awards," *Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.* ("*Cubic*"), 665 F.3d 1091, 1098 (9th Cir. 2011), which "applies with special force in the field of international commerce," *Mitsubishi*, 473 U.S. at 631. "A judgment is unenforceable as against public policy to the extent that it is 'repugnant to fundamental notions of what is decent and just in the State where enforcement is sought.'" *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 938 (D.C. Cir. 2007) (quoting *Ackermann v. Levine*, 788 F.2d 830, 841 (2d Cir. 1986) (quoting *Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C. Cir. 1981))). Application of the public policy exception is thus appropriate only when an arbitral award "'tends clearly' to undermine the public interest, the public confidence in the administration of the law, or security for individual rights of personal liberty or of private property." *Id.* (quoting *Ackermann*, 788 F.2d at 841).

12

As a starting point, none of the transactions pertinent to this case appear to have directly violated U.S. sanctions against Russian entities. TV-Novosti was not sanctioned by the U.S. government until September 13, 2024, after TV-Novosti had already executed an agreement to sell the arbitral award interest to petitioner and petitioner had paid in full. Kolleeny Decl. ¶ 12 (stating that petitioner paid TV-Novosti for the arbitral interest on August 27, 2024). OFAC sanctions operate prospectively, so a transaction cannot violate sanctions that are implemented after the transaction's execution. *See* 31 C.F.R. § 587.402 ("Unless otherwise specifically provided, any amendment, modification, or revocation of any provision in or appendix to this part or chapter or of any order, regulation, ruling, instruction, or license issued by OFAC does not affect any act done or omitted, or any civil or criminal proceeding commenced or pending, prior to such amendment, modification, or revocation."); *id.* § 587.202(a) ("Any transfer *after the effective date* that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 587.201, is null and void . . . ." (emphasis added)); Gov't Amicus Br. at 5 ("[T]here is less likelihood, based on the facts available at this time, that the relevant U.S. sanctions are implicated at all" because, according to petitioner, "none of the transactions occurred after the effective date that TV-Novosti was designated."). Thus, on the record available, neither the preceding transactions nor future payment of the award to petitioner, a non-sanctioned, UAE-based company, *see* Pet. ¶ 1; *Sanctions List Search*, OFAC, https://sanctionssearch.ofac.treas.gov [https://perma.cc/WT24-M3M4] (last visited Jan. 8, 2026) (returning no results for "Satoriagricultural" or "SCPM"), would violate any U.S. law. Indeed, the United States government implies, without formally taking a position, that recognition of the arbitral award would not violate U.S. law given the timing of the transactions "[a]s represented by

Satoriagricultural," *see* Gov't Amicus Br. at 4, making denial of the award as against public policy, based on the United States' sanctions against Russia, difficult to justify.

Even if payment of the arbitral awards would somehow violate U.S. sanctions, U.S. courts have consistently held that the public policy provision of the New York Convention "was not meant to enshrine the vagaries of international politics under the rubric of 'public policy,'" and that there is a distinction between the United States' "public policy" and its "national political interests." *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier*, 508 F.2d 969, 974 (2d Cir. 1974); *see Cubic*, 665 F.3d at 1099 ("An expression of national policy is not necessarily dispositive of the public policy issue under the Convention.").[5]  To deny recognition of an arbitral award under the public policy exception of the New York Convention, a court must find that the award conflicts with "fundamental notions of what is decent and just," *Tahan,* 662 F.2d at 864 (quoting Restatement (Second) Conflict of Laws § 117, cmt. c (1971)), not merely that the award conflicts with the interests of the United States.  Thus, courts confronted with arbitral awards owed *directly* to sanctioned parties have recognized such awards.  *See Cubic*, 665 F.3d at 1100 (confirming award in favor of sanctioned Iran); *see also Belship Navigation, Inc. v. Sealift, Inc.*, No. 95-cv-2748 (RPP), 1995 WL 447656, *6 (S.D.N.Y. July 28, 1995) (enforcing arbitration agreement under the New York Convention against sanctioned Cuba).  In short, "[t]o deny enforcement of this award largely because of the United States' falling out with [Russia] in recent

---

[5]      Although the government declined to take a position on whether recognition of the arbitral awards here would violate the United States' public policy, *see* Gov't Amicus Br. at 2-3, the government "confirms that it stands by its views presented in *Cubic*," *id.* at 3.  In *Cubic*, upon the request of the Ninth Circuit, the United States took the position that the public policy exception to the New York Convention should not bar enforcement of an arbitral award in favor of sanctioned Iran.  *Cubic*, 665 F.3d at 1099-100.  In its response to this Court's solicitation of its views on whether the public policy exception applies here, the government noted that "unlike *Cubic*, where there was no question about the involvement of sanctioned persons in the transactions at issue, . . . here there is less likelihood, based on the facts available at this time, that the relevant U.S. sanctions are implicated at all."  Gov't Amicus Br. at 5.

years would mean converting a defense intended to be of narrow scope into a major loophole in the Convention's mechanism for enforcement." *Parsons*, 508 F.2d at 974.

This conclusion is bolstered by the fact that "there is a great deal of difference between payment and confirmation." *Cubic*, 665 F.3d at 1098. After recognition of the awards by this Court, petitioner will still be required to execute the judgment by either extracting a voluntary payment from respondent or attaching respondent's assets. *Id.* If such a payment violates U.S. sanctions, the payment may be subject to blocking by OFAC or other U.S. law enforcement agencies. *See id.* ("Confirmation, standing alone, transfers no wealth to [sanctioned] Iran."); *Belship Navigation*, 1995 WL 447656, at *6 (enforcement of arbitration agreement appropriate though "[a]ny award that [petitioner] might recover through arbitration would be placed in a 'blocked' interest bearing account until relations with [then-sanctioned] Cuba improve to the point where the funds may be released to [petitioner]"). Unlike the Court, which in the default judgment posture may review only submissions by petitioner—and, to the extent the government is responsive, by the government—OFAC may issue subpoenas, 31 C.F.R. § 501.728, take depositions, *id.* § 501.730, and collect other evidence, *id.* § 501.732, during enforcement actions to ensure all transactions flowing out of the United States comply with U.S. sanctions, *see* 50 U.S.C. §§ 4303-4304 (prohibiting sanctioned transactions and authorizing President to enforce sanctions).

In sum, the public policy exception is inapplicable notwithstanding the sanctions imposed on TV-Novosti for interference with this country's elections and the possibility that SCPM acquired its interest in the awards, at a suspiciously enormous discount, in anticipation of TV-Novosti being sanctioned. Recognition of the arbitral awards at issue in this case is required under

the New York Convention, though would pose no barrier to future enforcement actions by OFAC, should such actions be appropriate.

Since none of the bases for denying enforcement of an arbitral award under the New York Convention apply here, recognition and enforcement of all three awards is appropriate.

### C. Post-Judgment Interest

Petitioner additionally requests post-judgment interest on the awards and costs awarded by the ICAC panel. Pet'r's Mot. at 1, 6. Although neither the FAA nor the New York Convention provide specific guidance regarding post-judgment interest, in general post-judgment "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. Accordingly, courts have ordered post-judgment interest on civil judgments confirming foreign arbitral awards. *See, e.g.*, *Swiss Inst. of Bioinformatics v. Glob. Initiative on Sharing All Influenza Data*, 49 F. Supp. 3d 92, 99 (D.D.C. 2014) (awarding post-judgment interest following default in petition to confirm arbitration award); *Mediso Med. Equip. Developing Servs., Ltd v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 364 (D.D.C. 2014) (same); *Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co. Ltd.*, 725 F. Supp. 2d 198, 203 (D.D.C. 2010) (same); *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 603 F. App'x 1, 3 (D.C. Cir. 2015) (confirmation of arbitral award under New York Convention was "fully sufficient alternative ground for the district court's judgment," which included post-judgment interest); *see also Tricon Energy, Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 457 (5th Cir. 2013) ("A judgment confirming an arbitration award—like any other civil judgment—is subject to § 1961."). This Court agrees with the conclusion reached by

these courts and finds that awarding post-judgment interest is appropriate and that the petitioner is entitled to post-judgment interest at the rate set forth in 28 U.S.C. § 1961.[6]

## IV.    CONCLUSION

For the foregoing reasons, petitioner SCPM's Motion for Default Judgment, ECF No. 14, is GRANTED, pursuant to the Federal Arbitration Act and the New York Convention; and JUDGMENT is ENTERED against T&R Productions LLC in the amount of $13,984,502.00, including $13,793,500.00 for the three arbitral awards and $191,002.00 in costs ordered by the arbitral panel, plus post-judgment interest at the rate set forth in 28 U.S.C. § 1961.  An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: January 8, 2026

_____
**BERYL A. HOWELL**
United States District Judge

---

[6]    Petitioner does not request pre-judgment interest but asks that the Court "reserve ruling on the entitlement to, and amount of, any prejudgment interest."  Pet'r's Mot. at 6.  This request is denied as unnecessarily extending this litigation, when the request could have been made as part of the pending motion for default judgment.